## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**KASHEYON LEE-CHIMA,**                      :

          **Plaintiff**          :          **CIVIL ACTION NO. 1:20-2349**

     **v.**                      :          **(JUDGE MANNION)**

**K. HUGHES,** *et al.*,                      :

        **Defendants**          :

### MEMORANDUM

**I. BACKGROUND**

Plaintiff, Kasheyon Lee-Chima, an inmate in state custody who was formerly confined at the State Correctional Institution in Waymart, Pennsylvania (SCI Waymart), filed the above-captioned civil rights action pursuant to 42 U.S.C. §1983.[1] Lee-Chima also asserts various state-law claims. Presently before the Court is Defendants' motion to dismiss the amended complaint. (Doc. 38). For the reasons set forth below, the Court will G**rant in part** and **Deny in part** Defendants' motion to dismiss.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT

Lee-Chima's allegations are lengthy and detailed. His claims, however, revolve around several distinct events that he alleges occurred in April 2019. First, Lee-Chima avers that on April 4, 2019, he was physically assaulted by three correctional officers. (Doc. 34 ¶¶ 1, 10-15, 17-18). He claims that—for no penological reason—defendants K. Hughes and C.O. McHugh shoved and pinned him against a wall and then repeatedly struck and punched him all over his body. (Id. ¶¶ 10-15, 17-18). He further alleges that, at some point during the physical assault, defendant C.O. Van Burren witnessed the beating, failed to intervene, and then joined in the attack. (Id. ¶¶ 13-15, 17). Additionally, Lee-Chima asserts that Hughes sexually assaulted him following the physical abuse by "groping/fondling [his] buttocks." (Id. ¶ 18).

Lee-Chima contends that he was then wrongfully placed in disciplinary segregation in the Restrictive Housing Unit (RHU) based on an intentionally falsified misconduct report. (Id. ¶¶ 19-23). He alleges this misconduct (which was filed by Hughes and charged Lee-Chima with acting as the aggressor by attempting to assault Hughes, McHugh, and Van Burren) was fabricated to cover up the physical assault, (id. ¶ 23), and that he was subsequently denied procedural due process during the misconduct hearing by defendant

C.J. McKeown, (id. ¶¶ 28-36, 44, 48, 50, 54, 59, 63-64, 70-73, 76-77). Specifically, Lee-Chima claims that McKeown wrongfully (1) denied his request to present eyewitness testimony to support his case, and (2) refused to allow him to review the surveillance video footage from the incident or to admit that video footage into evidence. (Id. ¶¶ 32-35). Lee-Chima avers that he was not released from the RHU until July 3, 2019, spending 90 days in disciplinary segregation for a misconduct he did not commit. (Id. ¶ 76). He further asserts that, due to this false misconduct and procedurally flawed hearing process, he was sanctioned to the "termination/removal" of his prison job and lost wages in the amount of $48.48. (Doc. 34 at 38).[2]

The final incident that Lee-Chima appears to complain of allegedly occurred on April 5, 2019. (See Doc. 34 ¶¶ 24-26). He asserts that correctional officers wrongfully "removed and destroyed" his personal property ("primarily . . . food") that he values at $31.12. (Id. ¶ 25; Doc. 34 at 38-39).

---

[2] Lee-Chima's amended complaint was docketed in a manner where the pages are out of order and occasionally upside down. Accordingly, when no paragraph number is given in the amended complaint, the Court will cite to the handwritten page numbers Lee-Chima provides rather than the electronically stamped CM/ECF docket page numbers that appear at the top of the page.

From these three incidents, Lee-Chima attempts to assert a bevy of federal and state-law claims against the four named Defendants. As best the Court can ascertain, he brings Section 1983 claims under the Eighth Amendment for excessive force, failure to protect (or failure to intervene), and deliberate indifference to serious medical needs. (See Doc. 34 at 3, 37). He also asserts Fourteenth Amendment claims for denial of procedural due process related to the misconduct proceedings, deprivation of personal property without due process, and violation of his equal protection rights. (See id.).[3] As for state-law claims, Lee-Chima seems to assert claims sounding in assault, battery, and false imprisonment. (See id. at 3-4, 37).

Defendants move to dismiss Lee-Chima's amended complaint in its entirety. (See Doc. 38). That motion is fully briefed and ripe for disposition.

## III. STANDARD OF REVIEW - MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."

---

[3] Lee-Chima also invokes the Fifth Amendment for some of his due process claims, but that constitutional provision is reserved for claims involving federal—not state—actors. See Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d. Cir. 2001) (explaining that, to assert a cognizable Fifth Amendment claim, defendants must be "federal actors"); Dunbar v. Barone, 487 F. App'x 721, 725 n.3 (3d Cir. 2012) (nonprecedential) (same).

Under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation omitted).

In resolving a motion to dismiss, the Court must "conduct a two-part analysis." Fowler, 578 F.3d at 210. First, it must separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, it must "determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (citation omitted).

## IV. Discussion

Defendants take issue with nearly every claim that Lee-Chima asserts in his amended complaint. The Court, therefore, will assess the sufficiency of each claim in turn.

### A. Eighth Amendment Claims

Lee-Chima alleges Eighth Amendment violations sounding in excessive force, failure to protect (or failure to intervene), and deliberate indifference to serious medical needs. Only the last of these claims lacks sufficient factual allegations.

#### 1. Excessive Force

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Ricks v. Shover, 891 F.3d 468, 480 (3d Cir. 2018) (quoting Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002)). The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury

inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Id. (quoting Smith, 293 F.3d at 649).

Defendants do not take issue with any of the elements of Lee-Chima's excessive force claim against Hughes, McHugh, and Van Burren. His allegations of being beaten while restrained and without a penological purpose clearly satisfy the pleading requirements for stating an excessive force claim. Instead, Defendants argue that Lee-Chima has failed to exhaust his administrative remedies with respect to this claim.

The problem with Defendants' argument is that failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement, and necessarily will require a factual determination that goes beyond the complaint. See Paladino v. Newsome, 885 F.3d 203, 208, 211 (3d Cir. 2018). The Court, therefore, cannot grant a Rule 12(b)(6) motion on this basis. Although Defendants are free to raise such an affirmative defense through a motion for summary judgment, Lee-Chima's extensive and well-documented grievance history, (see generally Doc. 34; Doc. 34-1), creates a formidable barrier to his excessive force claims being decided solely on an administrative exhaustion basis.

### 2. Failure to Protect, Failure to Intervene

To establish an Eighth Amendment failure-to-protect claim against a prison official, the inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)). Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence." Id. (quoting Farmer, 511 U.S. at 842).

This Eighth Amendment claim against Van Burren appears to be the only Section 1983 claim that Defendants leave unchallenged. Nevertheless, because Lee-Chima uses language in his amended complaint that implicates a failure-to-intervene claim and argues for its inclusion in his brief in

opposition to Defendants' motion to dismiss, (see Doc. 48 at 10-13), the Court will address its sufficiency.[4]

Lee-Chima alleges that Van Burren witnessed Hughes and McHugh physically assaulting him in a defenseless position but failed to take any action to intervene. This type of allegation has long been held to state an Eighth Amendment violation. See Mensinger, 293 F.3d at 650-51 (holding that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under §1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so"). Lee-Chima's allegations, taken as true, demonstrate that there was ample opportunity for Van Burren to intervene. Lee-Chima claims that he was physically assaulted in two different places and that Van Burren replaced one of the assailants when the assault continued in a new location. Consequently, Lee-Chima's failure-to-intervene claim against Van Burren can proceed.

### 3. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments on prisoners. See Farmer v.

---

[4] Lee-Chima's claim against Van Burren appears to fit better under the rubric of a "failure-to-intervene" claim, and thus the Court will construe it as such.

Brennan, 511 U.S. 825, 832 (1994). In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim of deliberate indifference regarding inadequate medical care, a plaintiff must demonstrate (1) "a serious medical need," and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." Estelle v. Gamble,

429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. Rouse, 182 F.3d at 197.

Defendants again do not challenge Lee-Chima's medical deliberate indifference claim based on its elements. Instead, they argue that Lee-Chima has failed to allege that any of the named Defendants had any personal involvement in the purportedly deficient medical care. (See Doc. 39 at 18-19). Defendants are correct.

It is well established that, for Section 1983 claims, a plaintiff must plead the requisite personal involvement in the alleged constitutional violation. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2022) (citation omitted). Lee-Chima does not provide any plausible allegations that Defendants—who are not medical providers or healthcare administrators—had any involvement in his medical care or purported lack thereof.

Lee-Chima argues, in his sur-reply, that medical staff failed to timely treat him "under the direction of Defendants Hughes and McHugh," and baldly claims that there was a "conspiracy" by Defendants to cover up the assault. (Doc. 55 at 19-20). There are two deficiencies with Lee-Chima's argument. First, it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss. See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing Pa. ex rel. Zimmerman v.

PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Second, even if these assertions appeared in his amended complaint, which they do not, such conclusory allegations regarding a conspiracy cannot meet the pleading requirements of Twombly and Iqbal. The Court, therefore, must dismiss Lee-Chima's claim of deliberate indifference to serious medical needs.

### B. Fourteenth Amendment Claims

Lee-Chima asserts three varieties of alleged Fourteenth Amendment violations. He claims that his procedural due process rights were infringed throughout the misconduct proceedings, that he was deprived of his personal property without due process of law, and that his equal protection rights were violated. Defendants challenge each claim under Rule 12(b)(6).

### 1. Procedural Due Process

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Notably, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from

those hearings do not usually affect a protected liberty interest." Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011).

Defendants contend that Lee-Chima's 90-days' disciplinary segregation in the RHU does not amount to an "atypical and significant hardship" such that a liberty interest would be implicated. They further contend that the process Lee-Chima received satisfies the Fourteenth Amendment's requirements in the context of a prison disciplinary proceeding. The Court need only address Defendants' first argument.

It has long been held that disciplinary segregation alone generally does not rise to the level of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). The United States Court of Appeals for the Third Circuit has repeatedly held that disciplinary segregation for periods much longer than that which Lee-Chima experienced does not rise to the level of an atypical and significant hardship. See Mensinger, 293 F.3d at 654 (seven months); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); Griffin v. Vaughn, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); Dunbar, 487 F. App'x at 725 (540 days). Thus, Lee-Chima's 90-day placement in the RHU, without more, does not implicate a liberty interest

under the Fourteenth Amendment, so his procedural due process claim must be dismissed.

That Lee-Chima also lost his prison job does not affect this determination. There is no independent liberty or property interest in a prison job arising from the Due Process Clause of the Fourteenth Amendment. James v. Quinlan, 866 F.2d 627, 629, 630 (3d Cir. 1989); see also Burns, 642 F.3d at 171 (explaining that prisoner-plaintiff did not have a property interest in his prison job). Nor does the loss of prison employment implicate an atypical and significant hardship such that there would be a deprivation of a state-created liberty interest. See Presbury v. Wenerowicz, 472 F. App'x 100, 101 (3d Cir. 2012) (nonprecedential). Moreover, the cases upon which Lee-Chima relies concern revocation of good time credits, a liberty interest that is protected by the Fourteenth Amendment but not implicated in his case. (See Doc. 48 at 13-15 (citing Edwards v. Balisok, 520 U.S. 641 (1997); Wolff v. McDonnell, 418 U.S. 539 (1974); Howard v. U.S. Bureau of Prisons, 487 F.3d 808 (2007))).

### 2. Deprivation of Property Without Due Process

Lee-Chima appears to raise a claim that he was deprived of his personal property by state actors without due process of law.[5] Such claims are cognizable in Section 1983 actions, see Hudson v. Palmer, 468 U.S. 517, 533 (1984), but are difficult to establish. That is primarily because a due process property-deprivation claim will not lie when "adequate state post-deprivation remedies are available." Id. In other words, even if an inmate is negligently or intentionally deprived of personal property by a state actor, there is no constitutional violation if the state provides "a meaningful post deprivation remedy for the loss." Id. & n.14.

Lee-Chima's amended complaint is silent as to whether adequate state post-deprivation remedies exist for the alleged confiscation and destruction of his personal property, but the Court notes that state tort law likely provides a remedy for claims like those he is asserting. See 42 PA. CONS. STAT. §8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the

---

[5] Defendants attack this claim on the basis that it purports to invoke the Takings Clause, (see Doc. 39 at 20-21), but the Court finds that a claim of deprivation of property without due process is a more appropriate fit for Lee-Chima's allegations. Lee-Chima, in his surreply, echoes this sentiment. (See Doc. 55 at 22).

possession or control of Commonwealth parties"); see also Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property-deprivation claim due to existence of state post-deprivation remedies). The Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results. See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). Consequently, the Court must dismiss Lee-Chima's Fourteenth Amendment property deprivation claim, because adequate state post-deprivation remedies exist for this alleged $31.12 loss, even if Lee-Chima did not avail himself of those remedies.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" Mack v. Warden Loretto FCI, 839 F.3d

286, 305 (3d Cir. 2016). An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment." Phillips, 515 F.3d at 243 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Lee-Chima contends that he was discriminated against by Hughes based on his race and sexual orientation.[6] (See Doc. 34 ¶¶ 7, 18). It appears that he is claiming that the verbal harassment, abuse, and threats from Hughes on April 4, 2019, constituted the discriminatory conduct to which he was subjected. (See id. ¶ 8). The problem for Lee-Chima is that verbal harassment on a single occasion does not implicate a constitutional violation. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."), abrogated on other grounds by Savory v. Cannon, 947 F.3d 409 (7th Cir. 2020). Moreover, as Defendants point out, Lee-

---

[6] Lee-Chima, however, never identifies his race or sexual orientation in his amended complaint. In his surreply, he states that he is "Latinx" and homosexual. (Doc. 55 at 27).

Chima's amended complaint does not allege that he was treated differently than other similarly situated prisoners. For these reasons, Lee-Chima's equal protection claim must be dismissed.

## C. State-Law Claims

Lee-Chima also asserts several state-law intentional torts against Defendants. Although not well developed, the claims appear to be assault, battery, and false imprisonment. These claims are barred by state statutory sovereign immunity.

Commonwealth parties acting within the scope of their employment generally are immune from suit except when immunity is explicitly waived. See 1 PA. CONS. STAT. §2310; 42 PA. CONS. STAT. §§8521, 8522(a). Pennsylvania's General Assembly has carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors. See generally 42 PA. CONS. STAT. §§8521, 8522. Section 8522(b) of Title 42 of the Pennsylvania Consolidated Statutes provides ten narrow categories[7] where the state has waived its sovereign immunity for claims involving negligent

---

[7] The ten exceptions set forth in 42 PA. CONST. STAT. §8522(b) concern: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.

conduct by Commonwealth parties. See id. §8522(a), (b). This statutory immunity applies to both negligent and intentional torts committed by Commonwealth actors. See La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

Lee-Chima's claims against Defendants—who are state actors and were working for the Commonwealth when the alleged incidents occurred— do not fall into any of the enumerated exceptions provided by Section 8522(b). Accordingly, his state-law claims of assault, battery, and false imprisonment are barred by state statutory sovereign immunity.

### D. Official Capacity Claims

Finally, although not addressed by Defendants, Lee-Chima's claims against Defendants in their official capacities, (see Doc. 34 at 6), must be dismissed because they are barred by Eleventh Amendment sovereign immunity. See 28 U.S.C. §1915(e)(2)(B)(ii) (mandating that "the court shall dismiss" a case at any time if the court determines that it "fails to state a claim on which relief may be granted").

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state. U.S. CONST. amend. XI; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v.

*Louisiana*, 134 U.S. 1, 10 (1890). This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983. See 42 PA. CONS. STAT. §8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. §8521(b)). There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief." *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, Ex parte Young, 209 U.S. 123 (1908)).

Lee-Chima does seek injunctive relief in his amended complaint, (see Doc. 34 at 40-41), but he either requests retroactive injunctive relief or injunctive relief that does not involve remediation of violations of federal law. Lee-Chima seeks expungement of the misconduct from his record and a lowering of his custody level, which is retroactive injunctive relief. He also seeks "immediate release on Parole" and an order that Defendants begin

paying damages within 30 days of successful resolution of his claims. (See id. at 41). Such remedies are not the type of prospective injunctive relief contemplated for official capacity claims against state officers. Rather, to meet the Ex Parte Young exception to Eleventh Amendment sovereign immunity, the injunctive relief sought must be "to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark, 344 F.3d 335, 345 (3d Cir. 2003).[8]

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a *pro se* civil rights complaint is vulnerable to dismissal for failure to state a claim for relief, the district court must permit a curative amendment unless granting leave to amend would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

Here, it is clear from the facts alleged in the amended complaint that any further attempt to amend would be futile as to the following claims: Fourteenth Amendment procedural due process; Fourteenth Amendment

---

[8] The Court additionally notes that, as to Lee-Chima's request for "immediate release" on parole, such a request sounds in habeas corpus rather than a Section 1983 remedy.

deprivation of property without due process of law; state-law intentional torts of assault, battery, and false imprisonment; and the official capacity claims against all Defendants. Thus, the Court will dismiss these claims with prejudice.

If able, Lee-Chima will be granted leave to amend his claims of Eighth Amendment deliberate indifference to serious medical needs and Fourteenth Amendment equal protection. If Lee-Chima chooses to file a second amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The complaint should set forth *all* Lee-Chima's claims (except those dismissed with prejudice) in short, concise, and plain statements, and in sequentially numbered paragraphs. It should, among other things, name proper defendants, specify the offending actions taken by a particular defendant, be signed, and indicate the nature of the relief sought.

If Lee-Chima chooses not to amend his pleadings a second time, his case will proceed on the following claims: (1) Eighth Amendment excessive force against Hughes, McHugh, and Van Burren in their individual capacities; and (2) Eighth Amendment failure-to-intervene against Van Burren in her individual capacity.

## VI.  CONCLUSION

For the reasons set forth above, the Court will **Grant in part** and **Deny in part** Defendants' motion (Doc. 38) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will also dismiss with prejudice Lee-Chima's official capacity claims against all Defendants pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will be granted, albeit in a limited fashion.  A separate Order shall issue.


_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**


**DATE: July 11, 2022**
20-2349-01

- 23 -